**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division**

| | |
|---|---|
| HOMES FOR SILVER SPRING, LLC )<br>1316 Fenwick Lane )<br>Silver Spring, MD 20910 )<br>*County:* Montgomery )<br>  )<br>     Plaintiff, )<br>  )<br>v. )<br>  )<br>NU FLOW AMERICA, INC. )<br>7710 Kenamar Court )<br>San Diego, CA 92121 )<br>  )<br>     and )<br>  )<br>AQUAM USA, INC. )<br>7710 Kenamar Court )<br>San Diego, CA 92121 )<br>  )<br>     and )<br>  )<br>SPECIALIZED PIPE TECHNOLOGIES )<br>7710 Kenamar Court )<br>San Diego, CA 92121 )<br>  )<br>     Defendants. )<br>_____) | Case No.: _____ |

## **COMPLAINT**

Plaintiff HOMES FOR SILVER SPRING, LLC ("**Plaintiff**"), by and through its undersigned counsel, Shulman, Rogers, Gandal, Pordy & Ecker, P.A., hereby submits the following Complaint against Defendants NU FLOW AMERICA, INC. ("**Nu Flow**"), AQUAM USA, INC. ("**Aquam**"), and SPECIALIZED PIPE TECHNOLOGIES ("**SPT**"), and in support thereof states as follows:

**The Parties**

1. Plaintiff is a Maryland limited liability company with its principal place of business located at 1316 Fenwick Lane, Silver Spring, Maryland 20910.

2. Plaintiff's sole member is AHC Inc., which is a Virginia corporation with its principal place of business located at 2230 N. Fairfax Drive, Arlington, Virginia 22201.

3. On information and belief, Defendant Nu Flow is a New York corporation with its principal place of business located in San Diego, California.

4. On information and belief, Nu Flow now operates under the trade name Specialized Pipe Technologies.

5. On information and belief, Nu Flow merged with, purchased, or otherwise acquired SPT or its tradename, Specialized Pipe Technologies.

6. On information and belief, Defendant SPT is a California corporation with its principal place of business located in San Diego, California.

7. On information and belief, Defendant Aquam is a Delaware corporation with its principal place of business located in San Diego, California.

8. On information and belief, both Nu Flow and SPT operate as subsidiaries of Aquam.

9. Nu Flow, SPT, and Aquam (collectively, the "**Defendants**") are listed as foreign corporations with the Maryland State Department of Assessments and Taxation.

**Jurisdiction and Venue**

10. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 based on the diversity of citizenship of the parties. The amount in controversy exceeds $75,000.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as Plaintiff's causes of action arise from events that occurred in Maryland.

**Facts Common to All Counts**

12. Plaintiff is the owner of an apartment building known as the Charter House, which is located at 1316 Fenwick Lane, Silver Spring, Maryland 20910 (the "**Charter House**").

13. The Charter House is a 15-story building comprising of approximately 212 residential units, and the Charter House primarily operates as a senior assisted-living facility.

14. Construction of the Charter House was completed in approximately 1965.

15. As is common for a building of its age, the Charter House's water piping system began to experience regular pinhole leaks starting in the last decade. Left unchecked, these pinholes leaks would eventually have caused significant property damage.

16. In order to address these leaks, Plaintiff determined that it should rehabilitate the piping by having an epoxy lining applied to the interior of the pipes.

17. Plaintiff retained Defendant Nu Flow to apply and install the epoxy lining to the piping. This epoxy lining, if applied correctly, would have extended the useful life of the Charter House's piping system.

18. Defendant Nu Flow represented and warranted that the epoxy lining would repair the leaks, and Nu Flow further warranted that the epoxy lining would extend the life of the pipes for an additional ten years.

19. On February 12, 2015, Plaintiff entered into a contract with Nu Flow to epoxy the inside of the entire piping system at the Charter House (the "**Contract**"). A true and correct copy of the Contract is attached as **Exhibit 1**.

20. The Contract provides that Plaintiff would pay $473,000 to Nu Flow "in exchange [for Nu Flow's performance of] . . . all obligations required by the Contract documents." *See* Contract, § 3.

21. The Contract further provides that "the [Charter House's] pipes will be cleaned and coated with Nu Line barrier coating material meeting ANSI/INSF Standard 61 consistent with ANSI/AWWA C210-97 Standards." *See* Exhibit A to Contract.

22. The Defendants had determined that the "Nu Line barrier coating material meeting ANSI/INSF Standard 61 consistent with ANSI/AWWA C210-97 Standards" referenced in the Contract was the correct product to use for the purpose of lining the Charter House's piping, given the temperature and water pressure conditions in the piping system.

23. As part of their agreement, Defendant Nu Flow also provided a warranty to Plaintiff for the work Nu Flow performed under the Contract (the "**Warranty**").

24. Specifically, the Warranty provides that "[Nu Flow] warrants that under normal use, its drain lining work will be free from defects in materials and workmanship for a period of ten (10) years from the date of [Nu Flow's] final invoice to [Plaintiff]." The Warranty further provides that "[Nu Flow's] sole liability and [Plaintiff's] exclusive remedy for drain lining work that fails to conform to this warranty is limited to repair or replacement of the nonconforming drain lining work."

25. In addition, the Warranty also provides:

> [Nu Flow] warrants that under normal use, the epoxy lining will not de-bond, break down or otherwise flake off, and will otherwise be free from defects in materials and workmanship for a period of ten (10) years from the date of [Nu Flow's] final invoice to [Plaintiff]. [Nu Flow's] sole liability and [Plaintiff's] exclusive remedy for potable work that fails to conform to this warranty is limited to repair or replacement of the nonconforming work.

26. Moreover, the Warranty further provides:

> If during the applicable warranty period: (i) a covered failure occurs; (ii) [Plaintiff] notifies [Nu Flow] in writing within five (5) business days of [Plaintiff's] discovery of the failure through the notice provisions provided in the Contract; and (iii) [Nu Flow] is permitted the opportunity to inspect the defect, then [Nu Flow] will correct the failure in accordance with the applicable warranty provided herein within a reasonable time, without charge to the [Plaintiff]."

27. In addition to the above-referenced provisions, the Contract also provides:

> If any legal action, arbitration or other proceeding is commenced to enforce or interpret any provision of this Contract, or arises from this Contract, the prevailing party will be entitled to receive from the other party, in addition to any relief that may be granted, the reasonable legal fees, costs, and expenses incurred in the action or proceeding.

28. Plaintiff has complied with all of its obligations under the Contract.

29. Pursuant to this Contract, Defendant Nu Flow began work on applying the epoxy lining to the piping in the Charter House in the summer of 2015, and Defendant completed this work in or around November of 2015.

30. At first, Defendants' application of the epoxy lining appeared to resolve the pinhole leak problems in the piping.

31. However, starting in 2019, Plaintiff learned of issues with the plumbing. Plaintiff then determined that the epoxy lining applied by Defendants had "delaminated" from the piping in certain areas. Plaintiff further determined that this delamination had occurred, and would continue to occur, causing significant damage to the piping system.

32. The delamination of the epoxy lining in the piping system caused the epoxy material to flake off and travel through the piping system before settling into showerheads and faucet aerators, among other places, causing blockages and water flow restrictions.

33. If left unchecked, this delamination process will accelerate over time, causing larger and larger areas of obstruction in the piping system. Eventually, these obstructions, if not identified and rectified promptly, will cause significant leaks and lead to substantial property damage at the Charter House. Additionally, the delamination process leaves the interior of the existing piping, which was epoxied to preserve the piping and prevent leaks, exposed to water flow, thus continuing the leaks that the epoxy process was meant to repair.

34. The epoxy lining installed by the Defendants was unevenly applied throughout the piping system. Defendants allowed the epoxy material to puddle in some sections and be nonexistent in other sections during the application process. In this way, Defendants failed to apply the epoxy material in a manner that complied with the material's maximum and minimum thickness requirements.

35. Plaintiff relied on Defendants, as the experts in applying the epoxy lining, to select the appropriate epoxy material for the Charter House and to apply it to the piping system correctly. Plaintiff could not have reasonably discovered that Defendants had not used an appropriate material and had not applied it correctly until problems with the piping system became manifest through ordinary use.

36. The only viable way to return the Charter House's piping system to working order will be to completely replace all of the pipes in the building.

37. Plaintiff contacted Defendants about the problems with the epoxy lining in the Charter House piping system in early 2019.

38. In response, in the spring of 2019, Defendants made a site visit to the Charter House to conduct tests and develop a remediation plan. Defendants made another site visit around September 25, 2019 and conducted additional tests.

39. Based on these visits, Defendants conceded that the epoxy material had not been applied to all of the piping in the Charter House, as required by the Contract. However, Defendants refused to replace the piping system in the Charter House.

40. To date, Defendants have refused to honor the commitment in the Warranty to repair or replace the piping system at the Charter House.

41. Plaintiff anticipates that it will cost in excess of $7 million to repair or replace the Charter House's piping system.

## COUNT I
### Breach of Contract

42. Paragraphs 1-41 are hereby incorporated by reference as if fully set forth herein.

43. Plaintiff and Defendant Nu Flow entered into the Contract, which required Nu Flow to apply an epoxy lining to the piping system in the Charter House.

44. Plaintiff has performed all of its obligations under the Contract.

45. Defendant Nu Flow, however, performed its work pursuant to the Contract using an epoxy material that was not appropriate for the existing design of the Charter House's piping system. Furthermore, Nu Flow did not apply the epoxy lining correctly to the piping.

46. The epoxy lining has become delaminated, and flakes of epoxy material have flowed through the piping and created blockages.

47. If unabated, these blockages will lead to significant damage to the Charter House and the property contained within it. Additionally, piping intended to remain coated with epoxy has become or will become exposed, thus continuing the deterioration the epoxy was intended to repair.

48. By incorrectly selecting the epoxy material and incorrectly applying the material to the piping system, which caused the delamination of the epoxy, Defendants breached the Contract.

49. As a result of the failure of the installed epoxy, the entire piping system must be replaced.

WHEREFORE, Plaintiff respectfully requests that this Court (1) enter a judgment against all Defendants, which are jointly and severally liable, awarding compensatory damages to Plaintiff in excess of $7,000,000 plus statutory pre-judgment and post-judgment interest; (2) award Plaintiff its reasonable attorneys' fees and costs; and (3) provide such other and further relief as this Court may deem just and proper.

## COUNT II
## Breach of Warranty

50. Paragraphs 1-41 are hereby incorporated by reference as if fully set forth herein.

51. Defendant Nu Flow provided a Warranty to Plaintiff for the epoxy lining work Nu Flow performed at the Charter House, and Defendants Aquam and SPT became responsible for that Warranty following their merger with Nu Flow.

52. As described more fully in paragraphs 24-26, the Warranty provides that Defendants warrant that the epoxy lining "will not de-bond, break down or otherwise flake off" for at least 10 years.

53. Defendants further warranted that they would "repair or replace" defective conditions.

54. However, within four years of its application, the epoxy lining installed by Defendant Nu Flow in the Charter House began to delaminate, causing blockages in the piping system.

55. Plaintiff promptly notified Defendants of the problems with the epoxy lining, and, following several site visits, Defendants agreed that the epoxy lining had not been installed as specified in the Contract.

56. However, Defendants, being liable for the failure of the epoxy, have refused to replace the Charter House's piping system, despite being obligated to do so by the Warranty. Thus, they have breached the Warranty.

57. As a result, Plaintiff will be forced to incur the expenses associated with replacing the entire piping system in the Charter House to remedy the effects of Defendants' defective application of the epoxy lining.

WHEREFORE, Plaintiff respectfully requests that this Court (1) enter a judgment against Defendants, who are jointly and severally liable, awarding compensatory damages to Plaintiff in excess of $7,000,000 plus statutory pre-judgment and post-judgment interest; (2) award Plaintiff its reasonable attorneys' fees and costs; and (3) provide such other and further relief as this Court may deem just and proper.

### COUNT III
### Negligence

58. Paragraphs 1-41 are hereby incorporated by reference as if fully set forth herein.

59. Defendant Nu Flow held itself out as a company with the expertise to properly select and apply an epoxy lining to the piping system of a large residential building.

60. Plaintiff relied on Nu Flow's above-mentioned expertise by, among other things, retaining Nu Flow to perform the epoxy lining tasks set forth in the Contract and to determine what epoxy lining materials would be required to resolve the pinhole leaks at the Charter House.

61. Nu Flow had a duty to Plaintiff to perform the epoxy lining work with due care and in a manner consistent with commercial standards. This included a duty to select the

appropriate epoxy lining material for the Charter House and to apply and install the material properly and in accordance with product requirements and industry standards.

62. Nu Flow breached its duty to Plaintiff by choosing to apply an epoxy lining material that was neither certified for nor appropriate for the environment in which it was being utilized.

63. Nu Flow further breached its duty to Plaintiff by not applying and installing the epoxy lining correctly and in accordance with industry standards.

64. The resulting damage to the Charter House from Defendants' negligence can only be repaired by a complete re-piping of the plumbing system at the Charter House, which is estimated to cost in excess of $7 million.

WHEREFORE, Plaintiff respectfully requests that this Court (1) enter a judgment against Defendants, which are jointly and severally liable, awarding compensatory damages to Plaintiff in excess of $7,000,000 plus statutory pre-judgment and post-judgment interest; (2) award Plaintiff its reasonable attorneys' fees and costs;  and (3) provide such other and further relief as this Court may deem just and proper.

April 17, 2020

Respectfully submitted,

SHULMAN, ROGERS, GANDAL,
   PORDY & ECKER, P.A.

        /s/
Glenn C. Etelson, Bar No. 06760
12505 Park Potomac Avenue
Sixth Floor
Potomac, MD  20854
(301) 231-0956
(301) 230-2891
getelson@shulmanrogers.com

*Attorney for Plaintiff*

43449166_1